1

2   FILED ———— ENTERED
    LODGED ———— RECEIVED

3

    OCT 14 2011

4        AT SEATTLE
    CLERK U.S. DISTRICT COURT
    WESTERN DISTRICT OF WASHINGTON
BY 5                        DEPUTY

6

7

8

9

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| 10   BERNARD R. CORALES, et al., | CASE NO. C10-1922JLR |
| 11   Plaintiffs, | ORDER GRANTING MOTION |
| 12   v. | FOR SUMMARY JUDGMENT |
| 13   FLAGSTAR BANK, FSB, et al., | |
| 14   Defendants. | |

15    Before the court are Defendants Flagstar Bank, FSB's ("Flagstar") and Mortgage

16   Electronic Registration System, Inc.'s ("MERS") motion for summary judgment (Dkt. #

17   48) and Defendant Northwest Trustee Services, Inc.'s ("NWTS") motion to dismiss the

18   amended complaint with prejudice (Dkt. # 53).  Having reviewed the motions, all papers

19   filed in support and opposition thereto, and the applicable law, the court GRANTS

20

21

22

10-CV-01922-ORD

ORDER- 1

1 Flagstar's and MERS's motion for summary judgment and also GRANTS NWTS's

2 motion to dismiss.[1]

3 ## II. FACTUAL AND PROCEDURAL BACKGROUND

4 On May 21, 2008, Plaintiff Bernard R. Corales borrowed $240,000 by executing a

5 note in favor of Axia Financial, LLC ("Axia"). (Am. Compl. (Dkt. # 37) ¶ 23; 2nd Cruz

6 Decl. (Dkt. # 50) Ex. A (attaching copy of the Note).) Axia subsequently sold Plaintiffs'

7 Note to Flagstar, endorsing the Note directly to Flagstar. (*Id.* Ex. A at 4.) Flagstar

8 continues to hold the Note, and has since endorsed it in blank, rendering the Note bearer

9 paper. (*Id.* at 5.)

10 Plaintiffs Bernard R. Corales and Maria Corales secured the debt with a Deed of

11 Trust on their property commonly described at 4092 Letitia Avenue, Seattle, Washington

12 ("the Property"). (*Id.* Ex. B (attaching a copy of the Deed of Trust).) The Deed of Trust

13 names Joan H. Anderson, EVP on behalf of Flagstar, as the trustee and grants the trustee

14 the power of sale in the event of default. (*Id.*)

15 Although Axia was the lender, the parties agreed in the Deed of Trust to designate

16 MERS as the beneficiary, "acting solely as nominee for Lender and Lender's successors

17 and assigns." (*Id.*) The Deed of Trust states that "MERS holds only legal title to the

18 interests granted" by the Deed of Trust, and that MERS "has the right to exercise any or

19 all of those interests." (*Id.*) On or about April 30, 2010, MERS, as beneficiary under the

20 Deed of Trust and nominee for Axia, executed an Assignment of the Deed of Trust

21

22 [1] No party requested oral argument with regard to either motion, and the court finds oral argument to be unnecessary as well.

ORDER- 2

1  ("Assignment") transferring all beneficial interest in the Deed of Trust to Flagstar.  (Am.

2  Compl. Ex. D; Mot. to Dismiss (Dkt. # 53) at 2, Ex. B (attaching true and correct copy of

3  the Assignment).)

4          In February 2009, nine months after Mr. Corales signed the Note, Plaintiffs

5  stopped making payments and defaulted on the Note.  (Morgan Decl. (Dkt. # 51) ¶ 2, Ex.

6  A ("Payoff Demand Schedule"); 1st Cruz Decl. (Dkt. # 15) Ex. E ("Notice of Trustee's

7  Sale").)  In March 2009, Mr. Corales sent a letter to his "Home Mortgage Lender"

8  apologizing for not making his February 2009 mortgage payment.  (*Id.* Ex. F.)  In the

9  letter, he explains that he lost his job in October 2008, and has been unable to find a new

10  one.  (*Id.*)  After Plaintiffs' default, Flagstar initiated nonjudicial foreclosure proceedings.

11  However, as described below, those proceedings have been continued due to this lawsuit

12  and Plaintiffs' various bankruptcy filings.

13          On or about May 19, 2010, Flagstar executed an Appointment of Successor

14  Trustee ("Appointment") naming NWTS as Successor Trustee and vesting NWTS with

15  all powers of the original trustee.  (*See* Am. Compl. Ex. E; Mot. to Dismiss at 3, Ex. C

16  (attaching true and correct copy of the Appointment).)  On or about June 7, 2010, NWTS

17  executed a Notice of Trustee Sale ("Notice"), which set a sale date for the Property of

18  September 10, 2010.  (*See id.*, Ex. D (attaching true and correct copy of the Notice).)

19          Plaintiffs filed this action on November 29, 2010.  (Compl. (Dkt. # 1).)  In early

20  January 2011, Plaintiffs also filed a bankruptcy petition.  (*See* Not. of Bankr. (Dkt. # 10);

21  *In re:  Bernard R. Corales,* No. 11-10142-SJS (W.D. Wash. Bankr.), Chapter 13

22  Voluntary Petition (Dkt. # 1); Mot. to Dismiss at 3, Ex. F.)  Plaintiffs voluntarily

1  dismissed this Chapter 13 bankruptcy a few weeks later. (*See id.*; Mem. Resp. to OSC

2  (Dkt. # 13) ¶ 3.)

3      On February 10, 2011, Flagstar moved for summary judgment on all of Plaintiffs'

4  claims. (1st SJ Mot. (Dkt. # 14).) On February 25, 2011, NWTS executed an Amended

5  Notice of Trustee's Sale ("Amended Notice"), which set a sale date for the Property of

6  April 15, 2011. (*See* Am. Compl. Ex. F; Mot. to Dismiss at 3, Ex. E (attaching true and

7  correct copy of Amended Notice).) On April 4, 2011, more than a month after the parties

8  had completed briefing on Flagstar's motion for summary judgment, Plaintiffs asked the

9  court to dismiss their claims so they could re-file them in bankruptcy court. (Not. of Vol.

10  Dismissal (Dkt. # 29).)

11      On April 26, 2011, the court denied Plaintiffs' motion for voluntary dismissal,

12  affording them instead the opportunity to "amend their complaint to bring it into

13  compliance with the Federal Rules of Civil Procedure and appropriate Supreme Court

14  precedents." (Order (Dkt. # 36) at 6.) The court also struck Flagstar's pending motion

15  for summary judgment without prejudice to re-filing if appropriate following the filing of

16  Plaintiffs' amended complaint. (*Id.*) Significantly, the court also stated that it appeared

17  "that Plaintiffs [we]re attempting to use the federal courts as a tool to improperly delay

18  adjudication of issues . . . before the court." (*Id.* at 5.)

19      In the meantime, however, on April 13, 2011, just two days before the scheduled

20  nonjudicial foreclosure sale of the Property, Plaintiffs again filed for Chapter 13

21  bankruptcy. (*See* Mot. to Dismiss at 3, Ex. G; *In re: Bernard R. Corales,* No. 11-14237-

22  TWD (W.D. Wash. Bankr.), Chapter 13 Voluntary Petition (Dkt. # 1).) On June 9, 2011,

ORDER- 4

1   the bankruptcy court dismissed the petition for failure to file the required schedules. (*Id.*

2   Bankr. Order (Dkt. # 15).)

3         On May 5, 2011, Plaintiffs filed a "Verified Amended Complaint" seeking

4   fundamentally different relief than their original complaint. (*See* Am. Compl. (Dkt. #

5   37).) In this verified amended complaint, Plaintiffs state on penalty of perjury that "[o]n

6   or about May 21, 2011, Plaintiff executed a Note and Deed of Trust for the sum of

7   $240,000 in favor of [Axia]." (*Id.* ¶ 23 (underlining in original).) In addition, Plaintiffs

8   also admit that "[t]he Deed of Trust names Defendant MERS as 'nominee' and as a

9   'beneficiary'." (*Id.*)

10         On June 7, 2011, Mr. Corales filed an "Emergency Affidavit." (Corales Aff. (Dkt.

11   # 45).) In the affidavit, in direct contravention to his sworn statement in the verified

12   amended complaint, Mr. Corales states that he "dispute[s] the authenticity of the

13   purported Note . . . , [and] dispute[s] that the purported Note bears [his] signature . . . ."

14   (*Id.* ¶ 11.) In contravention to his March 2009 letter to Flagstar, he also denies that he

15   defaulted on the Note. (*Id.*)

16         On June 16, 2011, Flagstar filed its second motion for summary judgment

17   seeking dismissal of all of Plaintiffs' claims contained within its verified amended

18   complaint. (2nd SJ Mot. (Dkt. # 48).) On July 7, 2011, NWTS filed a motion to dismiss

19   with prejudice Plaintiffs' claims against it. (Mot. to Dismiss (Dkt. # 53).) On July 21,

20   Plaintiffs filed a motion to amend their amended complaint. (Mot. to Amend (Dkt. #

21   59).) The court denied Plaintiffs' motion to amend on October 11, 2011. (Oct. 11, 2011

22

1   Order (Dkt. # 74).)   The court now considers Flagstar's and MERS's motion for

2   summary judgment and NWTS's motion to dismiss Plaintiffs' claims with prejudice.

3                                    **III. ANALYSIS**

4       **A. Standards**

5       NWTS has brought a motion to dismiss under Federal Rule of Civil Procedure

6   12(b)(6) with regard to the claims Plaintiffs have alleged against it in their amended

7   verified complaint. (Mot. to Dismiss at 1.)  When considering a motion to dismiss under

8   Rule 12(b)(6), the court construes the complaint in the light most favorable to the non-

9   moving party.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th

10  Cir. 2005).  The court must accept all well-pleaded allegations of material fact as true and

11  draw all reasonable inferences in favor of the plaintiff.  *See Wyler Summit P'ship v.*

12  *Turner Broad. Sys.*, 135 F.3d 658, 661 (9th Cir. 1998).  "To survive a motion to dismiss,

13  a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

14  relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949

15  (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Telesaurus*

16  *VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010).  "A claim has facial plausibility

17  when the plaintiff pleads factual content that allows the court to draw the reasonable

18  inference that the defendant is liable for the misconduct alleged."  *Iqbal,* 129 S. Ct. at

19  1949.  Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal

20

21

22

1   theory or the absence of sufficient facts alleged under a cognizable legal theory.

2   *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).[2]

3          Flagstar and MERS have moved for summary judgment of all claims against them

4   in Plaintiffs' verified amended complaint. (*See* 2nd SJ Mot.)  Summary judgment is

5   appropriate if the evidence, when viewed in the light most favorable to the non-moving

6   party, demonstrates "that there is no genuine dispute as to any material fact and the

7   movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex*

8   *Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th

9   Cir. 2007).  The moving party bears the initial burden of showing there is no genuine

10   issue of material fact and that he or she is entitled to prevail as a matter of law.  *Celotex*,

11   477 U.S. at 323.  If the moving party meets his or her burden, then the non-moving party

12   "must make a showing sufficient to establish a genuine dispute of material fact regarding

13   the existence of the essential elements of his case that he must prove at trial" in order to

14   withstand summary judgment. *Galen*, 477 F.3d at 658.

15          However, "[t]he mere existence of a scintilla of evidence in support of the non-

16   moving party's position is not sufficient" to meet the burden and one cannot oppose a

17   properly supported summary judgment motion by "rest[ing] on mere allegations or

18   denials of his pleadings." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

19   _____

20   [2] Because Mr. and Ms. Corales are proceeding *pro se*, the court must construe their
    complaint liberally even when evaluating it under the *Iqbal* standard. *Johnson v. Lucent Techs.,*
21   *Inc.*, --- F.3d ---, 2011 WL 3332368, at *9 (9th Cir. Aug. 19, 2011). Furthermore, "[l]eave to
    amend should be granted unless the pleading could not possibly be cured by the allegation of
22   other facts, and should be granted more liberally to pro se plaintiffs." *Id.* (quoting *McQuillion v.*
    *Schwarzenegger*, 369 F.3d 1091, 1099 (9th Cir.2004) (internal quotation marks omitted)).

1  Without specific facts to support the conclusion, a bald assertion of the "ultimate fact" is

2  insufficient. *See Schneider v. TRW, Inc.*, 938 F.2d 986, 990-91 (9th Cir. 1991).  Genuine

3  factual issues must exist that "can be resolved only by a finder of fact because they may

4  reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.  If the non-

5  moving party fails to make a sufficient showing of an element of its case, the moving

6  party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 325.

7  **B.  Flagstar's and MERS's Motion for Summary Judgment**

8  **1.  Alleged Securitization of Plaintiffs' Loan**

9  In their verified amended complaint, Plaintiffs allege that Flagstar "transferred"

10  their loan into a mortgaged-backed security fund related to Fannie Mae. (*See* Am.

11  Compl. ¶ 24 & Ex. C.)  However, even assuming that Plaintiffs' allegations are true, they

12  have not established that Flagstar presently lacks authority to enforce the Deed of Trust at

13  issue or that Flagstar lacks authority to initiate foreclosure proceedings.  It is undisputed

14  that Flagstar is in possession of the original Note at issue, endorsed in blank.  Flagstar

15  therefore is the holder of the Note with the right to enforce it and the corresponding Deed

16  of Trust. *See* RCW 62A.3-205 ("holder of an instrument" is entitled to enforcement);

17  *Fidel v. Deutsche Bank Nat. Trust Co.*, No. C10-2094RSL, 2011 WL 2436134, at *3

18  (June 14, 2011) ("[D]efendant has provided the Note, which was endorsed to defendant

19  and is currently in defendant's possession. Accordingly, defendant has the authority to

20  institute foreclosure proceedings.") (citing RCW 61.24.005 (defining "beneficiary" as the

21  "holder of the instrument or document evidencing the obligations secured by the deed of

22  trust")).

1    In a similar case, a federal bankruptcy judge recently rejected precisely Plaintiffs'

2   argument, holding that even if a lender sells a loan to Fannie Mae, the lender's possession

3   of the Note endorsed in blank means that it may foreclose in its own name. *In re*

4   *Martinez*, --- B.R. ---, 2011 WL 1519877, at * 5 & n. 44 (Bankr. D. Kan. Apr. 20, 2011)

5   (even assuming lender sold Note to Fannie Mae, "the note would still be in [the lender's]

6   possession and would be endorsed in blank – again making it a holder in possession of

7   the note entitled under the [Uniform Commercial Code] to enforce it against Plaintiff.");

8   *see also In re Veal*, 450 B.R. 897, 912 (B.A.P. 9th Cir. 2011) ("[T]he maker [of the Note]

9   should be indifferent as to who owns or has an interest in the note so long as it does not

10   affect the maker's ability to make payments on the note. Or, . . . [the plaintiff] should not

11   care who actually owns the Note—and it is thus irrelevant whether the Note has been

12   fractionalized or securitized—so long as they do know who they should pay."). Thus,

13   even if Fannie Mae has an interest in Plaintiffs' loan, Flagstar has the authority to enforce

14   it. Thus, the court grants Flagstar's and MERS's motion with regard to this issue.

15         **2.   MERS's Authority to Act as a Beneficiary**

16    Although Plaintiffs' allegations are somewhat unclear, they appear to be asserting

17   that MERS was not a proper beneficiary under the Deed of Trust and thus could not

18   assign its beneficial interest. (*See* Am. Compl. ¶¶ 34-37.) Plaintiffs, however, have

19   admitted that they signed a Deed of Trust that acknowledged that MERS was a

20   beneficiary under the deed and that MERS had the right to foreclose and sell property

21   covered by the deed. (*See* Am. Compl. ¶ 23 ("On or about May 21, 2008, Plaintiff

22   executed a Note and Deed of Trust . . . . The Deed of Trust names Defendant MERS as a

ORDER- 9

1  'nominee' and as a 'beneficiary'") & Ex. B at 3 ("Borrower understands and agrees that

2  MERS holds only legal title to the interests granted by Borrower in this Security

3  Instrument, but, if necessary to comply with law or custom, MERS (as nominee for

4  Lender and Lender's successors and assigns) has the right to exercise any or all of those

5  interests, including but not limited to, the right to foreclose and sell the Property; and to

6  take any action required of Lender including, but not limited to, releasing and cancelling

7  this Security Instrument.").)

8          This court has repeatedly rejected the argument that MERS is not a proper

9  beneficiary under a Deed of Trust where the plaintiff has executed a deed which

10  expressly acknowledges MERS's status as a beneficiary. *See, e.g., St. John v. Northwest*

11  *Trustee Servs., Inc.,* No. C11-5382BHS, 2011 WL 4543658, at *2-*3 (W.D. Wash. Sept.

12  29, 2011); *Rhodes v. HSBC Bank USA, N.A.,* No. C11-5303RJB, 2011 WL 3159100, at

13  *3-*4 (W.D. Wash. July 26, 2011) ("MERS had the authority to act as beneficiary under

14  a Deed of Trust where such authority was explicitly granted by plaintiff upon execution

15  of the instrument."); *Ceburn v. HSBC Bank USA, N.A.,* No. C10-5742BHS, 2011 WL

16  321992, at *3 (W.D. Wash. Feb. 2, 2011); *Vawter v. Quality Loan Serv. Corp. of Wash.,*

17  707 F. Supp. 2d 1115, 1125-26 (W.D. Wash. 2010); *Moon v. GMAC Mortgage Corp.,*

18  No. C08–969Z, 2008 WL 4741492, at *5 (W.D. Wash. Oct.24, 2008).[3] Accordingly, the

19  court grants Flagstar's and MERS's motion with regard to this issue.

20

21          [3] Judge Coughenour of this court recently certified three questions on this subject to the
    Washington Supreme Court. (*See Bain v. Metropolitan Mortg.,* Cause No. C09-0149JCC (W.D.
22  Wash.) "Order Certifying Questions to the Washington Supreme Court" (Dkt. # 159).) Judge

1            **3. Flagstar's Authority to Foreclose**

2            Plaintiffs also appear to be claiming that Flagstar has no authority to foreclose on

3 the property because MERS did not properly record or convey its beneficial interest in

4 the Deed of Trust to Flagstar, and therefore any nonjudicial foreclosure proceeding by

5 Flagstar against them is void. (*See* Am. Compl. ¶¶ 36 & 41(b).) As discussed above,

6 MERS is a proper beneficiary under the Deed of Trust here, and validly assigned its

7 interest under Plaintiffs' Deed of Trust to Flagstar. Moreover, Washington State does not

8 require the recording of such transfers and assignments. *See St. John*, 2011 WL 4543658,

9 at * 3 (citing RCW 61.24.005(2) (defining Beneficiary as the "the holder of the

10 instrument of document evidencing the obligations secured by the deed of trust"); *see*

11 *also, e.g., In re United Home Loans*, 71 B.R. 885, 891 (Bankr. W.D. Wash. 1978), *aff'd*,

12 876 F.2d 897 (9th Cir. 1989) ("An assignment of a deed of trust . . . is valid between the

13 parties whether or not the assignment is ever recorded. . . . Recording of the assignments

14 is for the benefit of the parties. . . .") (internal citations omitted.). The purpose of

15 recording the assignment is to put parties who subsequently purchase an interest in the

16 property on notice of which entity owns a debt secured by the property. RCW 65.08.070.

17 Therefore, Plaintiffs claim based on an alleged lack of recording of the assignment from

18

19

20 Coughenour has also stayed at least two cases pending resolution of the certified questions. *See*
21 *Dean v. Aurora Bank , F.S.B.*, No. C11-05339 RBL, 2011 WL 3812653, at * 2 (W.D. Wash. Aug. 29, 2011). However, in light of the overwhelming number of decisions from the Western District of Washington upholding the role of MERS in the factual circumstances similar to those
22 at issue here (cited above), the court finds no reason to similarly stay this action.

1  MERS to Flagstar is unavailing, and the court grants summary judgment to Flagstar and

2  MERS with regard to this issue.

3         **4.  Plaintiffs Are in Default**

4         Flagstar and MERS are also seeking summary judgment with regard to Plaintiffs'

5  default on the Note, and Flagstar's consequent right to initiate foreclosure proceedings.

6  (2nd SJ Mot. at 11-14.) Flagstar has submitted evidence detailing Plaintiffs' default.

7  (*See* 1st Cruz Decl. ¶ 6 Exs. E (attaching Notice of Trustee's Sale); 2nd Cruz Decl. ¶ 4,

8  Ex. C; Morgan Decl. (Dkt. # 51) ¶ 2, Ex. B (attaching June 8, 2011 Payoff Demand

9  Statement for Plaintiffs' loan, and identifying February 1, 2009 as the date of Plaintiffs'

10 default).) In addition, Flagstar has submitted evidence that Mr. Corales sent a letter to his

11 "Home Mortgage Lender," dated March 20, 2009, in which he apologizes for and admits

12 failing to make his mortgage payment. (1st Cruz Decl. ¶ 7, Ex. F.) Mr. Corales has

13 never disavowed this letter in any of his many filings with this court. Nor have Plaintiffs

14 ever submitted any evidence of timely payment on the Note to contradict or create a

15 materail issue of fact with regard to the evidence of default submitted by Flagstar.

16        In addition, Plaintiffs have explicitly admitted, under penalty of perjury, signing

17 the Note and the Deed of Trust at issue here. On May 10, 2011, in their verified amended

18 complaint, Plaintiffs state: "On or about May 21, 20008, Plaintiff executed a Note and

19 Deed of Trust for the sum of $240,000 in favor of AXIA FINANCIAL, LLC." (Am.

20 Compl. ¶ 23 (underlining and capitalization in original).)

21        Yet, less than a month later, on June 7, 2011, Mr. Corales filed an "emergency

22 affidavit" with the court, in which he flatly contradicts his previous sworn statement by

1 | "disput[ing] that the purported Note bears [his] signature." (Corales Aff. ¶ 11. He also

2 | contradicts his prior to letter to Flagstar by stating that he "den[ies] that [he] defaulted on

3 | the purported Note." (*Id.*; *see also id.* ¶ 3 ("I . . . deny that I have defaulted on the subject

4 | loan. . . .").) Once again, however, Mr. Corales submits no documentary or other

5 | evidence of timely payment on the Note to back up his bald assertion denying default.

6 | In the Ninth Circuit, the "sham affidavit rule" prevents a party from creating an

7 | issue of material fact by introducing an affidavit that contradicts prior deposition

8 | testimony. *Kennedy v. Allied Mutual Ins. Co.*, 952 F.2d 262, 266-67 (9th Cir. 1991).

9 | Courts have extended this rule to apply to affidavits that contradict a party's prior

10 | admission. *See Container Recovery, Inc. v. Shasta Nw., Inc.*, No. 05-1749-PK, 2007 WL

11 | 1724937, at * 6 (D. Or. June 11, 2007). Nevertheless, the rule is in tension with the

12 | principle that a court's role in deciding a motion on summary judgment is not to make

13 | credibility determinations or to weigh evidence. *Van Asdale v. Int'l Game Tech*, 577

14 | F.3d 989, 998 (9th Cir. 2009). Therefore, the rule should be applied with caution.

15 | Inconsistencies in a party's statements must be clear and unambiguous to justify striking

16 | an affidavit. *Id.*

17 | Here, the court has no difficulty finding that Mr. Corales's "emergency affidavit"

18 | is a sham. The statements quoted above in Mr. Corales's "emergency affidavit" are not

19 | minor inconsistencies or clarifying testimony. They are in direct contradiction to

20 | Plaintiffs' prior sworn statements in their verified amended complaint concerning

21 | execution of the Note at issue, as well as to the admissions Mr. Corales previously made

22 |

1  to Defendants concerning his default.[4]  Accordingly, the court strikes Mr. Corales's

2  "emergency affidavit" as a sham, and will not consider it in rendering its decision on

3  Flagstar's and MERS's motion for summary judgment.

4        As a result of the court's finding, there is no evidence in contravention of

5  Plaintiffs' default on the Note, and thus no material issue of fact with regard to default for

6  trial.  Accordingly, the court grants Flagstar's and MERS's motion for summary

7  judgment with regard to Plaintiffs' default on the Note at issue.

8        **5.  Axia's Alleged Failure to Disclose and RESPA**

9        Plaintiffs claim that they "are uncertain as to their rights under the Note and Deed

10  of Trust" because Axia "failed to disclose all affiliated business arrangements" at their

11  loan's origination.  (Am. Compl. ¶ 37.)  Plaintiffs appear to seek monetary damages for

12  Axia's alleged failure to comply with the Real Estate Settlement Procedures Act

13  ("RESPA"), 12 U.S.C. § 2601, *et seq.*  Plaintiffs, however, do not allege that Flagstar or

14  any other Defendant played any role in Axia's extension of credit to Plaintiffs.  (*See*

15  *generally* Am. Compl.)  Defendants therefore cannot be held liable for Axia's alleged

16  failure to comply with RESPA.  RESPA uses the definition of "creditor" that is found in

17  the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq.  *See* 12 U.S.C. §

18  2602(1)(B)(iv) (defining "creditor consistent with the definition found in 15 U.S.C. §

19

20        [4] The court's finding here is bolstered by its previous finding (when it denied Plaintiffs'

21  motion for voluntary dismissal) that it appeared that "Plaintiffs [we]re attempting to use the
federal courts as a tool to improperly delay adjudication of issues . . . before the court." (April

22  26, 2011 Order at 5.)  Further, the court cautions Plaintiffs that intentionally making false
statements under oath to a court of law can result in prosecution for perjury.

ORDER- 14

1  1602(f)). TILA defines a "creditor," in part, as "the person to whom the debt . . . is

2  initially payable on the face of the evidence of the indebtedness . . . ." 15 U.S.C. §

3  1602(f). Plaintiffs' debt was initially payable to Axia. Accordingly, no Defendant is

4  Plaintiffs' "creditor" under either TILA or RESPA.

5      In addition, even if Plaintiffs could bring a RESPA claim against Flagstar or

6  MERS (or any other Defendant) for Axia's alleged failure to disclose its affiliated

7  business arrangements, RESPA's one-year statute of limitations has lapsed. The

8  requirement to disclose affiliated business arrangements is governed by section 2607 of

9  RESPA. 12 U.S.C. § 2607(c)(4). Claims under section 2607 must be brought within one

10  year of the alleged violation. 12 U.S.C. § 2614. Plaintiffs' loan closed in May 2008 (1st

11  Cruz Decl. Ex. A.) Plaintiffs did not file suit until November 29, 2010. (*See* Compl.)

12  Thus, Plaintiffs' RESPA claim is time barred. The court grants summary judgment to

13  Flagstar and MERS with regard to this claim.

14      **6. Declaratory or Injunctive Relief**

15      Plaintiffs allege that they are entitled to declaratory or injunctive relief based on

16  the underlying allegations in their amended complaint, and ask the court to enjoin the

17  trustee's sale of the Property. (Am. Compl. ¶¶ 38-41.) Because the court has granted

18  summary judgment to Flagstar and MERS with regard to the substance of Plaintiffs'

19  underlying claims, Plaintiffs are not entitled to declaratory or injunctive relief either. *See*

20

21

22

1    RCW 61.24.130 (setting out requirements for injunctive relief in the case of a trustee's

2    nonjudicial foreclosure sale).[5]

3              **7.   New Claims Raised in Response to Summary Judgment Motion**

4              In response to Flagstar's and MERS's motion for summary judgment, Plaintiffs

5    assert new claims not plead in their amended complaint.  For example, Plaintiffs assert

6    that the Note at issue here is a security under the Securities Act of 1933 (*see* Resp. (Dkt.

7    # 52) at 2, 8-9, 11), that Flag star is subject to the Fair Debt Collection Practices Act

8    ("FDCPA"), 15 U.S.C. § 1692g, *et seq.* (*see id.* at 2, 4), and that Axia's endorsement of

9    the Note "without recourse" somehow "materially altered" the Note rendering it

10   unenforceable (*id.* at 4-6).[6]  It is improper for Plaintiffs to raise these claims in response

11   to a summary judgment motion, after the deadline for amending pleadings has passed

12   (*see* Sched. Ord. (Dkt. # 24) at 1), and without a showing of good cause pursuant to

13   Federal Rule of Civil Procedure 16(b)(4).  Nonetheless, in recognition of Plaintiffs' *pro*

14   *se* status, the court will briefly address these additional "claims."

15

16

_____

17       [5] Further, RCW 61.24.130(1) requires, as a condition of injunctive relief, "that the
     applicant pay to the clerk of the court the sums that would be due on the obligation secured by
18   the deed of trust if the deed of trust was not being foreclosed."  There is no evidence on the
     record that Plaintiffs are capable of making the required payments to the clerk of court which is a
19   statutory prerequisite to injunctive relief here.

20       [6] While none of these claims are alleged in Plaintiffs' amended complaint (*see generally*
     Am. Compl.), some of these claims may be alleged (although not adequately so) in Plaintiffs'
21   proposed second amended complaint. (*See* Prop. 2nd Am. Compl. (Dkt. # 59-1) at ¶¶ 24, 28.)
     The court, however, has denied Plaintiffs' motion for leave to amend its amended complaint and
     to file a second amended complaint. (Oct. 11, 2011 Order (Dkt. # 74).)  Accordingly, the
22   operative complaint here is Plaintiffs' verified amended complaint. (*See generally* Am. Compl.)

ORDER- 16

1       The Supreme Court has expressly stated that a "note secured by a mortgage on a

2  home" is "not properly viewed as [a] security[y]" under the Securities Act of 1933.

3  *Reves v. Ernst & Young,* 494 U.S. 56, 65 (1990). There is no dispute that Plaintiffs' Note

4  is secured by a deed of trust on their home. As such, the Securities Act of 1933 is not

5  applicable here. *See also Cowen v. Aurora Loan Servs.,* No. CIV 10-452-TUC-CKJ,

6  2010 WL 3342196 (D. Ariz. Aug. 25, 2010) ("Plaintiffs have failed to allege any facts

7  that would make a promissory note and deed of trust involving real estate subject to

8  either the Securities Act of 1933 or the Exchange Act of 1934.")

9       "The trend among Ninth Circuit District Courts has been to hold that enforcement

10  of a security interest through a nonjudicial foreclosure proceeding does not constitute the

11  collection of a debt" under the FDCPA. *Thepvongsa v. Reg'l Trustee Servs. Corp.,* No.

12  C10-1045 RSL, 2011 WL 307364, at *8 (W.D. Wash. Jan. 26, 2011); *see also Litgon v.*

13  *JP Morgan Case Bank,* No. C 11-2504 MEJ, 2011 WL 2550836, at *3 (N.D. Cal. June

14  27, 2011) (collecting cases); *Fong v. Prof'l Foreclosure Corp.,* No. C05-448JLR, 2005

15  WL 3134059, at * 2 (W.D. Wash. Nov. 22, 2005) ("Notably, Washington's Deed of Trust

16  Act provides that a foreclosure action constitutes enforcement of an interest in property

17  via a trustee's sale."). The court notes, however, that there is countervailing authority in

18  both in the Fourth and Fifth Circuits. *See Wilson v. Draper & Goldberg, P.L.L.C.,* 443

19  F.3d 373, 376 (4th Cir. 2006) and *Kaltenbach v. Richards,* 464 F.3d 524, 529 (5th Cir.

20  2006).

21       In any event, even if the FDCPA were generally applicable to nonjudicial

22  foreclosure proceedings, it would not be applicable here because Flagstar acquired its

ORDER- 17

1  interest in the Note before Plaintiffs defaulted on their obligation.  Flagstar committed to

2  purchase Plaintiffs' loan on May 17, 2008, took possession of the Note on May 27, 2008,

3  paid for the Note on June 5, 2008, and has remained in possession ever since.  (Daly

4  Decl. (Dkt. # 55) ¶ 2.)  Plaintiffs were not in default of their loan until February 1, 2009.

5  (Morgan Decl. (Dkt. # 51) ¶ 2.)  Accordingly, Plaintiffs cannot state a plausible claim

6  under the FDCPA because the FDCPA does not apply to lenders acquiring debt before

7  default.  *See De Dios v. Int'l Realty & Inv.*, 641 F.3d 1071, 1074 (9th Cir. 2011).

8           Finally, Plaintiffs assert Axia's endorsement of the Note "without recourse"

9  somehow "materially altered" the Note rendering it unenforceable.  (Resp. at 4-6).  By

10  endorsing the Note "without recourse," Axia was merely insulating itself from liability

11  with regard to any subsequent Note holders should Plaintiffs default on the Note.  *See*

12  *Hall v. Sec. Planning Serv. Inc.*, 371 F. Supp. 7, 14 (D. Ariz. 1974) ("An indorsement of

13  a note creates a contract (unless without recourse) binding indorser to pay the instrument

14  according to its tenor at time of indorsement to holder.").  Plaintiffs offer no authority for

15  their novel and somewhat perplexing argument.  Indeed, if the court were to follow

16  Plaintiffs argument to its logical conclusion, then any endorsement of a negotiable

17  instrument "without recourse" would render the instrument invalid.  Axia and Flagstar

18  endorsed the Note without recourse to effect the Note's negotiation.  The endorsements

19  "without recourse" by either Axia or Flagstar in no way altered Plaintiffs' obligations

20  under the Note.  None of the new claims or arguments Plaintiffs assert in response to

21  Flagstar's and MERS's motion for summary judgment, even if permissible at this stage in

22

1 │ the litigation, raise material issues of fact warranting a trial.  Accordingly, the court

2 │ grants Flagstar's and MERS's motion for summary judgment.

3 │ **C. NWTS's Motion to Dismiss**

4 │      Although it is difficult to discern precisely what claims Plaintiffs assert in their

5 │ amended complaint against NWTS, Plaintiffs do not appear to allege any claim against

6 │ NWTS that differs from their claims against MERS and Flagstar.  (*See generally* Am.

7 │ Compl.)  As discussed above, the court has already found these claims lacking on

8 │ summary judgment.  Although the motion for summary judgment was brought by

9 │ Flagstar and MERS, the court finds no reason why its rulings above should not apply

10 │ equally with regard to Plaintiffs' indistinguishable claims against NWTS.

11 │      Nevertheless, construing Plaintiffs' amended complaint as liberally as possible in

12 │ light of their *pro se* status, the court finds that they may be attempting to allege that

13 │ NWTS's appointment as trustee was not valid.  Plaintiffs, however, fail to allege any

14 │ specific facts against NWTS to support this assertion.  Their amended complaint is

15 │ devoid of sufficient factual matter against NWTS to "'state a claim to relief that is

16 │ plausible on its face.'"  *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009)

17 │ (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))

18 │      Although not alleged in their amended complaint, in response to NWTS's motion,

19 │ Plaintiffs also baldly assert (1) that NWTS violated Washington's Deed of Trust Act,

20 │ RCW 61.24, *et seq.*; (2) that NWTS does not have authority to initiate a foreclosure

21 │ action on the Property; and (3) that NWTS slandered title to the Property.  (*See generally*

22 │ Resp. (Dkt. # 58).)  Even assuming that the court were to permit Plaintiffs to plead these

1  additional claims in response to NWTS's motion to dismiss, they again fail to plead

2  sufficient facts in support of these claims to withstand dismissal under the standards set

3  forth in *Twombly,* 550 U.S. at 557, and *Iqbal,* 129 S.Ct. at 1949.  A claim does not suffice

4  if it tenders only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,*

5  129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 557.)

6         Further, a review of the various publically recorded documents that were

7  submitted by NWTS, and attached to Plaintiffs' amended complaint, supports NWTS's

8  motion to dismiss.[7]  Nothing in the Appointment of NWTS as trustee (*see* Am. Compl.

9  Ex. E; Mot. to Dismiss at 3, Ex. C), NWTS's first Notice of Trustee's Sale (*see id.*, Ex.

10  D), or NWTS's Amended Notice of Trustee's Sale (*see* Am. Compl. Ex. F; Mot. to

11  Dismiss at 3, Ex. E) indicate any wrong-doing on the part of NWTS.[8]  In face of this

12  documentary evidence, Plaintiffs' bald allegations, devoid of any factual enhancement,

13  cannot withstand NWTS's motion to dismiss.  The court, therefore, grants NWTS's

14  motion to dismiss Plaintiffs' claims against it.[9]

15

16         [7]On a motion to dismiss, the court may consider documents or exhibits attached to
Plaintiffs' complaint, a writing of unquestioned authenticity that is relied upon in the complaint,
17  or public records. *Swartz v. KPMG, LLP,* 476 F.3d 756, 763 (9th Cir. 2007) (stating that on
motion to dismiss court may consider exhibits attached to the complaint or other documents
18  relied upon in the complaint); *Papasan v. Allain,* 478 U.S. 265, 268 n.1 (1986) ("Although this
case comes to us on a motion to dismiss under Federal Rule of Civil Procedure 12(b), we are not
19  precluded in our review of the complaint from taking notice of items in the public record . . . .").

20         [8] Further, Plaintiffs have never alleged that they failed to timely receive either of the
Notices of Trustee's Sale.  Indeed, the Property has yet to be sold in foreclosure.

21         [9] The court has already afforded Plaintiffs an opportunity to amend their complaint.  (*See*
April 26, 2011 Order at 6; *see also generally* Am. Compl.)  In so amending, Plaintiffs were
22  unable to draft a complaint sufficient to withstand Flagstar's and MERS's second motion for

# IV. CONCLUSION

Based on the foregoing, the court hereby ORDERS that: (1) Flagstar's and MERS's second motion for summary judgment (Dkt. # 48) is GRANTED; (2) NWTS's motion to dismiss Plaintiffs' claims with prejudice (Dkt. # 53) is GRANTED; (3) Flagstar's and MERS's motion to amend the scheduling order (Dkt. # 66) is DENIED as MOOT; and (4) Plaintiffs' case is DISMISSED for the reasons stated herein.

Dated this 14th day of October, 2011.

JAMES L. ROBART
United States District Judge

---

summary judgment and NWTS's motion to dismiss. In addition, the court recently denied Plaintiffs' motion to amend their amended complaint and file a second amended complaint because they failed to show good cause for their delay in seeking amendment after the scheduling order's deadline for amending pleadings had passed. (*See* Oct. 11, 2011 Order (Dkt. # 74).) The court finds that "[n]o amendment could save these plaintiffs," and granting a further opportunity to amend, even in recognition of Plaintiffs' *pro se* status, would be futile. *See Bell v. City of Kellogg*, 922 F.2d 1418, 1425 (9th Cir. 1991).